**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**


STEVIE ELKINS,

                Plaintiff,

v.                                         CIVIL ACTION NO.  5:13-cv-00927

DIVERSIFIED COLLECTION SERVICES, INC.,
and BANK OF AMERICA, N.A.,

                Defendants.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed *Bank of America, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint* ("BANA's Mot.") (Document 19) and its supporting memorandum (Document 20). The Court has also reviewed *Defendant Diversified Collection Services, Inc.'s Partial Joinder in Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint* (Document 21) with respect to Counts II through IV as well as *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss* (Document 23).  After careful consideration of the First Amended Complaint and the parties' written submissions, the Court grants in part and denies in part Defendants' motion to dismiss, for the reasons set forth below.


*I.*

On October 22, 2012, Plaintiff, Stevie Elkins, filed his Complaint against Defendants Bank of America, N.A. ("BANA") and Diversified Collection Services, Inc. ("Diversified"), in the Circuit Court of Raleigh County, West Virginia, for violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). (Def.'s Notice of Removal, Ex. A.

(Document 1-1)).   In his First Amended Complaint, Plaintiff alleges that he and his wife purchased a home in 2008 through a purchase money note of $75,480.   Two years later, he sought to refinance the loan. (First Am. Compl. ¶¶ 5-6.)   Plaintiff alleges that a BANA agent misrepresented that it would refinance his loan and stay foreclosure.   However, the foreclosure process continued and his home was sold in July 2010.   (First Am. Compl. ¶¶ 6-7.)   Plaintiff alleges that Bank of America was the successful bidder at the foreclosure, paying $83,237, but it assigned its rights thereto to the Government National Mortgage Associates. (First Am. Compl. ¶ 7.)   According to Plaintiff, as a result of the foreclosure sale, no balance remains on the secured note.   (*Id*.)   Thereafter, BANA "falsely reported" on an Internal Revenue Service Form (Form 1099) that he had debt forgiveness or cancellation on the purchase money note.   Plaintiff alleges that due to the "negligent or intentional" actions of BANA, his tax refunds for 2011 and 2012 were "confiscated by the Department of Treasury[.]"    (First Am. Compl. ¶ 8.)

On April 10, 2012, Plaintiff received a letter from Defendant Diversified informing him that it was collecting a debt for the Department of Defense and United States Department of Treasury in the amount of $54,232.60.  (First Am. Compl. ¶ 9.)  Subsequently, Diversified began contacting Plaintiff by telephone. (First Am. Compl. ¶ 11.)   Plaintiff alleges that in its communications, Diversified failed to identify the nature of the original obligation and represented that it was an agent for the United States government.  (First Am. Compl. ¶¶ 9, 11.) Plaintiff further alleges that Diversified failed to provide any information or documentation to explain its demand for $54,232.60, despite the written and oral requests from Plaintiff and his counsel.  (First Am. Compl. ¶ 11.)  Instead, Defendant Diversified continued to communicate with Plaintiff.   Plaintiff also alleges that Diversified's communications with Plaintiff "were either as collection agent for Defendant [BANA] or its assignee, or as a direct result of false

2

reporting by [BANA] to the United States government." (First Am. Compl. ¶ 10.)

As a result, Plaintiff alleges in Count One that Defendant Diversified acted at all times as an agent for BANA, or some other entity, on the false information provided by BANA. Plaintiff alleges that Defendants engaged in repeated violations of the WVCCPA by: engaging in unreasonable or abusive conduct by placing telephone calls to Plaintiff, in an attempt to collect the debt, in violation of WV Code § 46A-2-125; causing his phone to ring or engaging telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient with the intent to annoy, abuse and oppress him, in violation of WV Code § 46A-2-125(d); communicating with him after it appeared he was represented by legal counsel, in violation of WV Code § 46A-2-128(e); failing to clearly disclose the name of the business entity demanding payment, in violation of WV Code § 46A-2-127(a) and (c); falsely representing the character, extent and amount of the debt, in violation of WV Code § 46A-2-127(d); falsely representing that Defendant Diversified is an agent or instrument of or could vouch for the United States government, in violation of WV Code § 46A-2-127(e), and inaccurately publicizing information about the alleged debt to third parties, in violation of WV Code § 46A-2-126. (First Am. Compl. ¶ 13).

To round out the balance of his First Amended Complaint, Plaintiff alleges that Defendants negligently failed to train, supervise, monitor or otherwise control its employees to insure that its employees did not violate the WVCCPA as alleged in Count I, and that as a result, his tax refund was confiscated, he lost his house, and was annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise distressed. (First Am. Compl. ¶¶16-17) (count two - negligence). Plaintiff further alleges that he suffered emotional distress as a result of Defendants atrocious, intolerable and extreme conduct, which included Defendants calling

him after it was known he was represented by counsel, adopting policies and procedures without regard to West Virginia law and which were designed to have the effect of inflicting emotional distress to coerce a consumer to pay the Defendant, and as a result of the refusal to explain the basis and nature of the debt. (First Am. Compl. ¶ 19) (count three – intentional infliction of emotional distress). Finally, Plaintiff asserts an invasion of privacy claim, wherein he alleges that the acts of the Defendants, in filing a false report to the IRS, Department of Defense and other entities, resulted in arbitrary changes to his tax return and the "confiscation of his tax refund." (First Am. Compl. ¶ 23.) With respect to this claim, Plaintiff further asserts that he had an expectation of privacy to be free from harassing and annoying telephone calls and from the false report of information to United States government agencies. (*Id.*) Plaintiff seeks actual damages and civil penalties for each violation, statutory damages as adjusted for inflation pursuant to W. Va. Code § 46A-5-106, general and punitive damages and the cost of litigation, including attorney fees, court costs and fees. (First Am. Compl. at 8).

On January 16, 2013, Defendants removed this action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332 (Notice of Removal (Document 1)). Plaintiff did not challenge the removal. In the instant motion, BANA moves for the dismissal of each asserted claim and any further relief that the Court deems appropriate. (Document 19). Diversified joins the motion to the extent that it contends that Plaintiff has failed to state a claim for the common law state claims (counts two through four). (Document 21). Plaintiff contests each challenge and asserts that his pleading sufficiently places Defendants on notice of his claims and includes adequately pled allegations to assert a claim. (Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n") (Document 23)).

*II.*

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. Such a motion tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" (*Id.*) Rule 8(a)(2) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557). The Court must "accept as true all of the factual allegations contained in the complaint" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by

5

mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).   To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570).   Put differently, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570).   A plaintiff must, using the complaint, "articulate facts, when accepted as true, … 'show' that the plaintiff has stated a claim entitling him to relief."   *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### *III.*

Defendants challenge the sufficiency of Plaintiff's Complaint by asserting that he has failed to plead sufficient facts or information to support his claims.  The Court has reviewed the substance of Plaintiff's claims and finds that even assuming Plaintiff's allegations to be true, he has failed to state a claim upon which relief can be granted with respect to several of his claims. The Court will review each claim separately.

#### A.  *Count One – Violations of the WVCCPA*

BANA asserts that Plaintiff has failed to allege that it engaged directly or indirectly in any debt collection activity involving the $54,232.60 indebtedness or that it called or sent correspondence to Plaintiff to collect on the debt.   (Memorandum of Law in Support of

6

Defendant Bank of America, N.A.'s Motion to Dismiss Amended Complaint ("BANA's Mem.") (Document 20) at 5-6).  BANA further contends that assuming Plaintiff's allegation is true – that it filed a false Form 1099 declaring forgiveness of debt as income when no debt remained on the loan – this allegation does not subject it to the prohibitive conduct of the WVCCPA.

The Court has considered Plaintiff's allegation that BANA is a debt collector that engaged directly or indirectly in debt collection, as those terms are defined under the WVCCPA (First Am. Compl. ¶4.)[1]  The Court agrees with BANA that Plaintiff has failed to assert in Count One any action detailing BANA's efforts to collect on the alleged debt.  Inasmuch as Plaintiff has not alleged that BANA engaged, directly or indirectly, in any debt collection activity, the Court finds this allegation to be a mere legal conclusion which this Court is entitled to reject. "[B]are legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

Indeed, Plaintiff has alleged that BANA, as its loan servicer, was its initial contact to refinance his home mortgage, that the loan was foreclosed upon and that BANA purchased the loan. Plaintiff also alleges that BANA assigned its rights to the Government National Mortgage Associates.  (First Am. Compl. ¶¶ 6-7.)  At no point after the foreclosure does Plaintiff allege

---

[1]    The WVCCPA provides specific definitions for the terms "debt collector" and "debt collection" as follows:

> "Claim" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes, whether or not such obligation has been reduced to judgment.

> "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer.

> "Debt collector" means any person or organization engaging directly or indirectly in debt collection. The term includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims.

W. Va. Code § 46A-2-122(b) - (d).

that BANA telephoned him or communicated with him about the alleged debt or to collect on the alleged debt.   Notwithstanding Plaintiff's allegation that Defendant Diversified's collection activities were performed as a "collection agent" for BANA, Plaintiff explicitly alleges that Defendant Diversified communicated with him after the foreclosure and advised that it was collecting upon a debt for the Department of Defense and the United States Department of Treasury, not BANA.  (First. Am. Compl. ¶ 9.)  Plaintiff then pleads, in a legally inconsistent fashion, that Defendant Diversified's collection activities were performed for BANA as its "assignee."  (First. Am. Compl. ¶ 10.)  Plaintiff's pleading is void of any factual allegations to support any allegation that BANA facilitated debt collection activity through Diversified, as an "agent" or "assignee."  Consequently, the Court finds that Plaintiff has not alleged any facts that BANA is a debt collector as that term is defined under the statute.

A cursory review of the pleading reveals that the thrust of Plaintiff's discontent with BANA is the allegation that BANA falsely reported that Plaintiff received income pursuant to a debt forgiveness transaction.   Assuming as true that BANA falsely filed a Form 1099, "negligently or intentionally" (First Am. Compl. ¶ 8), such an act cannot be said to be a "debt collection" activity, as that term is defined by the WVCCPA, because it is not an "action, conduct or practice" whereby the debt collector is "solicit[ing]" a "claim" for collection" or collecting on the claim owed or due or allegedly owed or due.  BANA's alleged false reporting was not to collect a claim—or a consumer debt—under the statute, but a report of income derived from a foreclosure transaction.  Consequently, the Court cannot find that BANA's alleged false reporting is sufficient to establish a claim under the WVCCPA.

Based on the foregoing, the Court finds that BANA's motion to dismiss Count One should be **granted**.

### B.  Count Two - Negligence

With respect to Plaintiff's negligent training and supervision claim, both Diversified and BANA assert that "Plaintiff does not - nor could he - allege any duty owed by Defendant to Plaintiff.  Even if Plaintiff could allege such a duty, he failed to allege any breach of duty, or any damages resulting from such a breach."  (BANA's Mem. at 7.)   Additionally, Defendants assert that Plaintiff's negligence claim must arise out of a special duty separate from the duties the WVCCPA imposes.  (*Id*. at 7-8.)  In response, Plaintiff asserts that Defendants breached the duty to abide by the WVCCPA by proceeding to collect on a debt which has been satisfied and to instruct their employees on the law to avoid unlawful collection practices.  (Pl.'s Opp'n at 5-6.) Plaintiff also argues that BANA negligently filed a false Form 1099 which resulted in the unwarranted taxation of Plaintiff.

To maintain a negligence action, a plaintiff must allege "that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff."  *Aikens v. Debow*, 541 S.E.2d 576, 580 (W.Va. 2000). Furthermore, a plaintiff must allege that the defendant's negligence was the proximate cause of the plaintiff's injury.  (*Id.* at 491.) Notwithstanding his arguments in his opposition to the instant motion, in his complaint, Plaintiff does not allege that Defendants owed him a duty.  Plaintiff merely alleges "Defendant negligently failed to train[,] supervise, monitor or otherwise control its employees to ensure that its employees did not violate the WVCCPA as alleged in Count I."  (First Am. Compl. ¶ 16).   Indeed, Plaintiff asserts no facts which suggest Defendants failed to properly train, supervise, monitor, or otherwise control its employees. Taking Plaintiff's limited allegations as true, a showing of negligence simply cannot be made.

Furthermore, Plaintiff does not address Defendants' argument that he failed to allege that

a special duty separate from the WVCCPA supports his negligence claim.  The failure to address

Defendants' argument in this regard is a concession of the same.  Thus, this Court finds for these

reasons that this claim should be dismissed for Plaintiff's failure to state a claim upon which

relief can be granted.

### C.   Count Three - Intentional Infliction of Emotional Distress (IIED)

Defendants move for dismissal of this claim by contending that Plaintiff's IIED claim is

fatally flawed because Plaintiff has not made sufficient factual allegations of conduct which is

atrocious or outrageous or that his distress was sufficiently severe. (BANA's Mem. at 9).

Defendants contend that Plaintiff failed to assert facts to demonstrate what conduct fits the broad

description of outrageous and intolerable conduct and when the conduct occurred. (*Id*.)

In West Virginia, the tort of intentional infliction of emotional distress or the tort of

outrage was first defined in *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692 (W. Va.

1982).  In that case, the West Virginia Supreme Court of Appeals stated that "one who by

extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to

another is subject to liability for such emotional distress, and if bodily harm to the other results

from it, for such bodily harm." *Harless*, 289 S.E.2d at703 (quoting the Restatement of Torts

(Second), § 46).  To prevail on this claim, a plaintiff is required to prove that:

> (1) the defendant's conduct was atrocious, intolerable, and so
> extreme and outrageous as to exceed the bounds of decency; (2)
> the defendant acted with the intent to inflict emotional distress, or
> acted recklessly when it was certain or substantially certain
> emotional distress would result from its conduct; (3) the actions of
> the defendant caused the plaintiff to suffer emotional distress; and
> (4) the emotional distress suffered by the plaintiff was so severe
> that no reasonable person could be expected to endure it.

*Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d.419, 425 (W.Va. 1998).

Accepting as true all factual allegations contained in Plaintiff's complaint, the Court finds that he has successfully alleged the necessary facts to state a claim upon which relief can be granted with respect to this claim. In this Count, Plaintiff incorporates the allegations in his complaint and specifically alleges various instances of Defendants' conduct he contends were atrocious, intolerable and extreme so as to exceed the bounds of decency.  He includes allegations that Defendants placed telephone calls to him after having knowledge that he was represented by counsel; that Defendants adopted policies and procedures without regard to the law; that their policies and procedures are designed to inflict emotional distress; that BANA filed a false and fraudulent Form 1099[2]; that Diversified used the name and projected force of the United States government to collect a false debt; that Diversified's agents refused to explain the basis or nature of the debt and that Defendants' actions resulted in his suffering emotional distress. (First Am. Compl. ¶¶ 19-20.)  He also alleges he has been annoyed, inconvenienced and harassed, bothered, upset, angered, harangued and otherwise caused indignation and distress. (First Am. Compl. ¶ 21.)[3]  Plaintiff has detailed the conduct of the Defendant he believes was "extreme and outrageous" and done with the intent to harass.  He has also included allegations about how this Defendant's conduct affected him.  Thus, this Court finds the IIEP claim should not be dismissed.

### D.  Count Four – Invasion of Privacy

Finally, in West Virginia, there are at least four grounds upon which to base a claim for an invasion of privacy.  Specifically, invasion of privacy claims may be asserted by "(1) an

---

[2]   (*See* First Am. Compl. ¶ 8) (Plaintiff referring to BANA's report of Form 1099 as a "negligent or intentional" act.

[3]   Plaintiff also alleged that various acts of the Defendants, in the alleged violation of the WVCCPA, constituted criminal conduct. (First Am. Compl. ¶ 19(c)-(f).) Defendants contest these allegations by asserting that a private cause of action does not lie under the referenced criminal statute, W. Va. Code § 61-8-16.  Plaintiff does not challenge this assertion in his opposition. (Pl.'s Opp'n at 6.)  Consequently, no further finding is warranted relative to these allegations.

11

unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. pt. 8, *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70 (W.Va. 1984).   Defendants argue that "the only possible privacy right impacted" in this case is the first ground listed above.  An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [his or her] private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'" *Harbolt v. Steel of West Virginia, Inc.*, 640 F.Supp.2d 803, 817 (S.D.W.Va.2009) (Chambers, J.) (quoting Restatement (Second) of Torts § 652B).   According to Defendants, Plaintiff fails to sufficiently plead such a claim because he has only asserted the bare elements of the claim.  Additionally, Defendants discount Plaintiff's allegations that his privacy was invaded by the "harassing and annoying telephone calls" to his home (First Am. Compl. ¶ 23) and the "filing [of] a false report to the IRS, Department of Defense and other entities" (*id*.) by asserting that these allegations "contradict the types of conduct prohibited by the common law cause of action."

However, this Court disagrees in that Plaintiff has accomplished the minimum standard of pleading, in regards to Defendant Diversified.  Plaintiff has alleged that telephone calls were made to his home about a debt which he contends has been satisfied or which is the result of a false reporting.  Despite his failure of averring the number and times of the telephone calls or communications in his pleading, he has alleged enough details in the pleading that any call on a satisfied debt "invaded or intruded" upon the solitude of his private affairs.  Therefore, upon consideration of the entirety of the First Amended Complaint, this Court finds an invasion of privacy claim plausible against Defendant Diversified.

Conversely, the Court finds that Plaintiff's allegations against BANA are inadequate. Plaintiff has alleged that his expectation of privacy was infringed upon based on "harassing and annoying" telephone calls. However, as stated above, the pleading is devoid of any allegation that BANA communicated with Plaintiff after his foreclosure to collect upon a debt through a telephone call or otherwise.  In his opposition to BANA's motion, Plaintiff asserts an argument that BANA "coerced [him] into executing a Release after the foreclosure on his property at the same time [BANA], through its agents, represented that they were negotiating a refinance with him." (Pl.'s Opp'n at 6.)   Plaintiff then argues that Defendant Diversified, "the agent of Bank of America's assignee, . . . communicated in writing and by telephone calls to Plaintiff in his home."   As this Court found above, Plaintiff has not asserted any factual allegations that Defendant Diversified was acting on behalf of BANA, but rather the Department of Treasury and the Department of Defense.  Finally, Plaintiff asserts that the filing of the "false 1099" resulted in the "confiscation of" his 2011 and 2012 tax returns and that the same was an invasion of privacy. However, Plaintiff has not sufficiently pled that an alleged false Form 1099 invaded his "right to privacy" as an invasion of privacy claim is established by law.  (*See* Syl. pt. 8, *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70 (W.Va. 1984)).  Therefore, the Court finds that the invasion of privacy claim against BANA should be dismissed.

*IV.*

Wherefore, as discussed herein, the Court does hereby **ORDER** that *Bank of America, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint* (Document 19) and *Defendant Diversified Collection Services, Inc.'s Partial Joinder in Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint* (Document 21) be **GRANTED IN PART**

**AND DENIED IN PART.**   Specifically, the Court **ORDERS** that BANA's motion be **GRANTED** as to Count One (WVCCPA violations).  Inasmuch as Defendant Diversified did not seek relief from Count One, the claim survives against Defendant Diversified.  Moreover, the Court **ORDERS** that both Defendants' motion to dismiss Count Two (Negligence) be **GRANTED**.   Further, the Court **ORDERS** that BANA's motion to dismiss Count Four (Invasion of Privacy) of the First Amended Complaint be **GRANTED.**  Consequently, Count Two is **DISMISSED** and Count Four as to BANA only is **DISMISSED.**   Finally, the Court **ORDERS** that the instant motions be **DENIED** as to the remaining alleged claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        July 15, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

14